IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IVIS W. JOHNSON | § |
| | § |
| VS. | §   CIVIL ACTION NO. H-07-4516 |
| | § |
| CITY OF HOUSTON - FIRE DEPARTMENT | § |

## OPINION AND ORDER

Before the Court with the consent of the Parties pursuant to 28 U.S.C. § 636(c), is the "Motion for Summary Judgment" of Defendant, City of Houston (City); the Motion seeks the complete dismissal of the complaint of Plaintiff, Ivis W. Johnson. The Court, having given careful consideration to the Motion, the Parties' other submissions, the summary judgment evidence and the applicable law now issues this Opinion and Order.

Johnson, an African-American, began working for the City of Houston in 1993. By 1997, he had been made a shop manager in the Fleet Division of the Houston Fire Department (HFD). Throughout his employment, Johnson perceived a racially discriminatory atmosphere at work and he, along with other African-American employees, periodically filed complaints of discrimination, both internally and with the EEOC.

In April 2004, Tom Dowdy was made the Director of the Fleet Division and Johnson began to observe an increase in the discriminatory practices at work. In January 2005, John Brown was made the Assistant Director of the Fleet Division and, according to Johnson, his working conditions became increasingly hostile. On December 29, 2006, Brown actually told Johnson that his performance evaluations, which had already been unjustifiably declining, were going to be purposefully lower than acceptable to provide support for a recommendation to the Fire Chief, Phil

Boriske, that Johnson be terminated.  Knowing that his days at work were numbered, and unwilling to continue to endure the racial hostilities until his inevitable termination, Johnson submitted his letter of resignation to Chief Boriske on January 6, 2007.

A few months prior to his resignation Johnson did something he would live to regret.  In the fall of 2006, Johnson became aware of a rumor that Dowdy was involved in an after-hours sexual relationship with another employee of the Fire Department on HFD property.  Believing that the relationship was being covered up by Brown and Chief Boriske, Johnson anonymously faxed a memorandum concerning Dowdy's indiscretions to the members of the Houston City Council.  One week later, Johnson anonymously faxed a similar memorandum to HFD Staff Services.  On November 28, 2006, a formal complaint was filed against Johnson with the Office of Inspector General (OIG) alleging that Johnson's memorandums were false, slanderous, and violative of HFD regulations.  The complaint prompted a formal investigation into Johnson's alleged misconduct.  Johnson was interviewed during the investigation and, after initially denying he sent the faxes, admitted he had done so.  The investigation was still in progress when Johnson submitted his letter of resignation, therefore, Chief Boriske refused to accept Johnson's resignation.  Upon completion of the investigation OIG found insufficient evidence of any inappropriate sexual conduct by Dowdy and, on January 31, 2007, Chief Boriske indefinitely suspended Johnson for, *inter alia*, making a false report concerning the character and conduct of Dowdy in violation of HFD Rules and Regulations.  Johnson did not appeal his indefinite suspension.

On May 21, 2007, Johnson filed a charge of discrimination with the Texas Workforce Commission, alleging discrimination based on race, age and retaliation.  On September 28, 2007,

the EEOC issued a Right to Sue letter. On December 26, 2007, Johnson filed the instant suit through which he is presently pursuing only claims of race discrimination and retaliation. The City now seeks summary judgment and the complete dismissal of Johnson's remaining claims.

The Court will not dwell on the well-known summary judgment calculus except to state that it has, as it must, viewed the evidence and drawn all reasonable inferences from that evidence in the light most favorable to Johnson, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), and avoided making any credibility determinations. <u>Dibidale of La., Inc. v. American Bank & Trust Co.</u>, 916 F.2d 301, 307-08 (5th Cir. 1990) ("Credibility assessments are not fit grist for the summary judgment mill.")

## ANALYSIS

As an initial observation, the Court notes that because Dowdy and Brown were Johnson's supervisors and had the authority to make recommendations to Chief Boriske concerning Johnson's employment, they acted as agents of the City and the City may be held vicariously libel for actions taken by them in furtherance of the City's business. See <u>Long v. Eastfield College</u>, 88 F.3d 300, 306 (5th Cir. 1996)

## THE RACE DISCRIMINATION CLAIM

Johnson's race discrimination claim must be evaluated under the burden-shifting structure set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 208-04 (1973), which requires Johnson to first establish a *prima facie* case of unlawful discrimination. Johnson is a member of a protected class, was qualified for his job, and has alleged sufficient facts to buttress his opinion that Dowdy and Brown, especially, acted with racial animus. To satisfy the adverse employment action element of his *prima facie* case, Johnson alleges he was constructively discharged. A

3

constructive discharge satisfies the discharge element in a wrongful discharge case. <u>Ward v. Bechtel Corp.</u>, 102 F.3d 199, 202 (5th Cir. 1997)  This Court may never know whether Johnson's allegations can establish "working conditions…so intolerable that a reasonable employee would feel compelled to resign," however, on the basis of Johnson's direct evidence of Brown's express disclosure of his plan to achieve Johnson's termination, Cf. <u>Bozé v. Branstetter</u>, 912 F.2d 801, 805 n.2 (5th Cir. 1990) (Inferring that a direct threat of termination may support a constructive discharge allegation), the Court will assume that Johnson's allegations are sufficient to complete his *prima facie* case and raise the inference of unlawful discrimination.

In the face of Johnson's *prima facie* case, the City has produced a facially valid non-discriminatory reason for his termination: the dissemination of false and slanderous reports about Dowdy. Consequently, the inference of racial animus has been negated. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993)

It is, therefore, incumbent upon Johnson to show that the reason given for his termination is pretextual in order to avoid summary judgment. This, Johnson cannot do. A pretext is "a false or weak reason of motive advanced to hide the actual or strong reason" for an employment decision. <u>Black's Law Dictionary</u>, 1307 (9th Ed. 2009)  The reason given for Johnson's indefinite suspension was his faxing of the defamatory memorandums which were determined, through an independent investigation, to be false and violative of HFD regulations. Johnson even admits that he faxed the memorandums about Dowdy. While he argues that he did not know the reports were false because he simply reported what had been told to him by co-workers and, therefore, he "defamed no one," his argument is without merit. It is basic, hornbook law that "one who repeats or otherwise republishes defamatory matter is subject to liability as if he had

originally published it, even though he negligently failed to ascertain the truth. Restatement (Second) of Torts §§ 578 and 580B (1997). "Where, as here, the reasons articulated for the employer's adverse employment actions 'are rational ones, the objective truth of which is not seriously disputed, the burden of establishing them as pretextual is a heavy one indeed." Cf. Elliot v. Group Medical & Surgical Services, 714 F.2d 556, 567 (5th Cir. 1993)   More significantly, a fact finder cannot disregard the employer's explanation solely on the basis of a *prima facie* showing of discrimination; the Plaintiff must come forward with sufficient evidence from which a jury could find that the employer's explanation was false and a mere cover-up of unlawful discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000), see also EEOC v. Louisiana Office of Comm. Servs., 47 F.3d 1438, 1443 (5th Cir. 1995) ("The trier of fact may not disregard the Defendant's explanation without *countervaling evidence* that it was not the real reason for the discharge" (emphasis added)   Stated another way, a jury cannot reject the employer's reasons simply because "the employer's business judgment or policies do not appeal to its sensibilities." Elliot, 714 F.2d at 566   Here, Johnson simply has no proof that the reason given by Chief Boriske for his suspension was false or pretextual; Johnson's subjective belief that the true reason for his suspension was discriminatory, however genuine, cannot provide a basis for judicial relief. Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999)   Because generalized testimony by Johnson regarding his subjective belief of Chief Boriske's discriminatory animus is insufficient to get to the jury in the face of proof showing an adequate non-discriminatory reason for his discharge, the City's Motion for Summary Judgment must be granted as to Johnson's race discrimination claim.

## THE RETALIATION CLAIM

Resisting the temptation, proposed by the City, to limit Johnson's retaliation claim to the factual allegations in his charge of discrimination, the Court will consider all of the facts asserted by Johnson in support of his claim. See Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir. 1993) ("A Title VII cause of action 'may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'")

Viewing the evidence completely in Johnson's favor, the Court believes that he has established a *prima facie* case of retaliation. Johnson engaged in protected activities by filing internal grievances against Dowdy and Brown. Long, 88 F.3d at 306 n.5 (Opposition clause of Section 2000e-3(a) "is broad enough to include…using the employer's internal grievance mechanisms.") (quoting Hochstadt v. Worchester Foundation for Experimental Biology, Inc., 425 F.Supp. 818, 824 (D.C. Mass.) *aff'd* 545 F.2d 222 (1st Cir. 1976)    Johnson suffered an adverse employment action, his alleged constructive discharge, see supra. And, since the standard for establishing the "causal link" element of a Plaintiff's *prima facie* case is not stringent, McMillan v. Rust College, Inc., 710 F.2d 1112, 1116 (5th Cir. 1983), the Court finds that Johnson has sufficiently alleged a causal link between the protected activity and his alleged constructive discharge with his proof of Brown's direct threats and attendant actions.

Finding that Johnson has established a *prima facie* case activates the burden shifting structure applicable to Title VII disparate treatment cases as set forth in McDonnell Douglas. See McMillan, 710 F.2d at 1116 (McDonnell Douglas test is also applicable to Title VII unlawful

retaliation cases.)  As shown above, the City has articulated a legitimate non-retaliatory reason for suspending Johnson:  the publication of the defamatory memorandums.  Consequently, any inference of unlawful retaliation has dropped from the case.  <u>St. Mary's</u>, 509 U.S. at 511    The Court is, therefore, left with the ultimate question -- whether Johnson's summary judgment evidence is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."  <u>Boeing Co.v. Shipment</u>, 411 F.2d 365, 374 (5th Cir. 1969) (en banc) <u>see</u> <u>also</u> <u>Rhodes v. Guiberson Oil Tools</u>, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)    That is to say, could the fact finder conclude from the summary judgment evidence that the City would not have terminated Johnson "but for" his protected activities.

In addressing this inquiry, it is imperative to keep in mind that it was Chief Boriske who suspended Johnson, not Dowdy or Brown.  As mentioned at the outset, Dowdy and Brown had the authority to recommend that Johnson be terminated, therefore, if Chief Boriske acted solely as the conduit of Brown's retaliatory intent - as his proverbial "cat's paw" -- the City could be found liable on Johnson's retaliation claim.  <u>Long</u>, 88 F.3d at 307, <u>citing</u> <u>Shager v. Upjohn Co.</u>, 913 F.2d 398, 405 (7th Cir. 1990)    But Johnson has offered no summary judgment evidence that Dowdy or Brown had made any recommendation to Chief Boriske regarding Johnson's termination prior to the decision to suspend him.  Even more determinative is the fact that Chief Boriske based his decision on an independent OIG investigation into the formal complaints against Johnson.  As a result, any causal connection between Johnson's protected activities and his alleged constructive discharge was irretrievable broken.  <u>Long</u>, 88 F.3d at 307    Moreover, even if Chief Boriske knew of Brown's forthcoming recommendation and considered it, in part, in making his final decision, no liability would arise because Johnson has offered no proof that he would not have

7

been suspended had he not engaged in protected activities.  See Jack v. Texaco Research Center, 743 F.3d 1129, 1131 (5th Cir. 1984)     In the absence of evidence to establish the causal link element of Johnson's retaliation claim, the claim fails and the City's Motion for Summary Judgment must be granted.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (A complete failure of proof of an essential element of the nonmovant's case renders all other facts immaterial; therefore, there can be no genuine issue of material fact.)

For all of the foregoing reasons, it is the **ORDER** of this Court that the "Motion for Summary Judgment" (Instrument no. 39) of the City of Houston is **GRANTED** and all claims asserted by Plaintiff, Ivis W. Johnson, against the City of Houston are **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _____1st_____ day of April, 2010.

John R. Froeschner
United States Magistrate Judge